**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **The Culture Project,** | : | **Case No. 16-11874 (MEW)** |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
| **SUBCULTURE, LLC,** | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **Adv. Pro. No. 17-1029** |
|  | : |  |
| **ROGERS INVESTMENTS, A NEVADA LIMITED PARTNERSHIP,** | : |  |
|  | : |  |
| Defendant. | : |  |

_____

**BENCH DECISION REGARDING PLAINTIFF'S APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND DEFENDANT'S REQUEST FOR ABSTENTION**

A P P E A R A N C E S :

SHAFFERMAN & FELDMAN LLP
Attorneys for Debtor
New York, New York
    By: Joel Shafferman, Esq. (telephonically)

ADAM LEITMAN BAILEY, P.C.
Attorneys for Plaintiff SubCulture LLC
New York, New York
    By: Jeffrey R. Metz, Esq.
        William J. Geller, Esq.

OVED & OVED LLP
Attorneys for Defendant Rogers Investments
New York, New York
    By: Aaron J. Solomon, Esq.

ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.
Attorneys for The Bertha Foundation
New York, New York
    By: Lori A. Schwartz, Esq. (telephonically)

HERZOG & SHEFFIELD, P.C.
Attorneys for The View UpStairs LLC
New York, New York
    By: Nathan Sheffield, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**


This is the Court's final bench decision with respect to rulings that were previously announced in open court on May 2, 2017.

The Culture Project, Inc. is a debtor in a Chapter 11 bankruptcy case in this court. The Chapter 11 case number is 16-11874. The Culture Project leases space from Rogers Investments NV L.P. The leased space includes two performing arts theaters. The Culture Project subleases one of the theaters (in a basement space) to SubCulture, LLC and has agreed to share certain other common facilities.

In January 2017, The Culture Project filed a motion seeking permission to assume the lease pursuant to the terms of section 365 of the Bankruptcy Code. I denied that motion last week for reasons that I will describe in a moment. I have a separate matter still pending before me that requires decision today. SubCulture has filed an adversary proceeding against the landlord, Rogers Investments, and against Culture Project, and has filed an application for a temporary restraining order in that adversary proceeding.

The request for a temporary restraining order was scheduled for hearing before me on March 1, 2017, and I was prepared to announce a bench decision on that day. However, the landlord and The Culture Project agreed to several extensions of time while they continued their

own efforts to try to work things out regarding the assumption of the underlying lease, which would have avoided the need for a temporary restraining order. Those efforts apparently have failed. I was again prepared to announce a decision on the temporary-restraining-order application on April 26, 2017, but I was informed then that Subculture and the landlord might have an agreement that would avoid the need for a restraining order. As a result, the matter was postponed to today. The efforts to reach agreement apparently have failed and so the matter is ripe for decision.

As background: section 365(d)(4) of the Bankruptcy Code imposes a deadline by which time a debtor must assume or reject a lease of nonresidential real property. Section 365(d)(4) provides that a lease is "deemed rejected" if it is not assumed within 120 days after the commencement of the case. The 120-day deadline may be extended by the Court for an additional 90 days, and the Court did so in this case. However, further extensions cannot be granted without the consent of the landlord. There have been several extensions of the deadline in this case with the consent of the landlord. Pursuant to those agreed extensions, the deadline for the assumption of the lease will expire at the end of the day on May 5, 2017, three days from now.

As I noted a moment ago, The Culture Project filed a motion to assume the lease in January 2017. Under section 365(b) of the Bankruptcy Code, The Culture Project could not assume the lease unless it could cure defaults or provide adequate assurance that any default would be promptly cured. It also had to provide adequate assurance of future performance under the lease. The Culture Project acknowledged, on March 1 and again last week, that it had failed to pay more than $158,000 of rent that was due prior to the filing of this bankruptcy case, and that it had underpaid its post-petition rent by more than $180,000, for a total deficit of more than

3

$339,000.  The Culture Project attempted to arrange donations or guarantees of obligations to allow a cure of these defaults, but it acknowledged, on March 1st and again last week, that it had been unable to do so, and it conceded that it was not in a position to provide a cure of its existing defaults or an adequate assurance of a prompt cure.

The landlord, of course, remains free to accept a smaller amount or a revised payment plan or something less than an assurance of a prompt cure.  The landlord also is free to allow more time than the existing deadline through May 5.  But the landlord is also within its rights to say no and to insist that the debtor provide what the Bankruptcy Code requires before the lease may he assumed.  I understand that the landlord has not agreed to accept a lesser amount and has not agreed to further extensions of time.  As a result, The Culture Project has not been able to assume the lease.  I suppose that circumstances could change, but at least at this moment it does not appear that there will be a renewed motion or an assumption of the lease or a further agreement to extend the May 5 deadline.

Before addressing the specifics of the application for a temporary restraining order, it is appropriate to make some comments on the effect, under the Bankruptcy Code, of a failure by The Culture Project to assume the lease before the statutory deadline expires.

Section 365(d)(4) of the Bankruptcy Code states that if a debtor does not assume a lease of nonresidential real property before the expiration of the deadline, the lease is "deemed rejected," and "the trustee shall immediately surrender that nonresidential real property to the lessor."  Section 365(g) also provides that a rejection of a lease constitutes a breach of the lease immediately before the filing of the petition.  11 U.S.C. § 365(g).  Although there are occasionally cases holding to the contrary, it is generally well settled that a rejection is not, by itself, a termination of a lease.  A debtor must surrender the leased space and the lease is deemed

4

to have been breached, but the lease itself is not terminated by the rejection. *See* 3-365 Collier

on Bankruptcy ¶ 365.10[3] (confirming that when a lease is deemed rejected by the expiration of

time under section 365(d)(4), "the debtor's right to possession of the premises is extinguished,

but he leasehold itself is not."); *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114

F.3d 379, 386-87 (2d Cir.  1997) (holding that a rejection is treated as a breach and not as a

termination); *In re Henderson*, 245 B.R. 449, 453-54 (Bankr. S.D.N.Y. 2000) (noting that a

rejection is not the same as a termination but that the debtor has the obligation to surrender

property after a rejection).

Courts have struggled in deciding what rights a subtenant has following a deemed

rejection of a main lease under which a debtor was the tenant.  Some courts have held that the

rejection of the main lease is a termination of the leasehold and, therefore, a termination of the

sublease. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (treating a

rejection of a lease as a termination of the lease and therefore of a sublease).  However, the idea

that a rejection is a termination of the main lease is contrary to section 365(g) and contrary to

binding and more recent appellate authority in this Circuit.

Some other courts have considered whether a sublessee has rights under section 365(h) of

the Bankruptcy Code in the event that a debtor rejects a prime lease.  Section 365(h) says that if a

debtor rejects a lease under which the debtor is a lessor, the tenant may elect either to treat that

lease as terminated or may retain its rights, including its rights to keep possession of property on

the terms specified in the rejected lease.  By its terms, section 365(h) addresses a situation in

which the debtor, as landlord, purports to reject a lease, and not necessarily a situation in which

the debtor, as a lessee and sublessor, has lost its own rights to occupy space.  However, at least

one court has held that subtenants continue to have some rights under section 365(h) even if the

debtor rejects the prime lease under which the debtor was a lessee. *See In re Amicus Wind Down Corp.*, 2012 WL 604143, at *2 (Bankr. D. Del 2012) (holding that a subtenant retained its possessory rights under section 365(h), but that a debtor's obligation to surrender the property required the debtor to evict the subtenant).

Note, however, that even in the *Amicus Wind Down* case the subtenant's rights were quite limited. The court did not hold that the subtenant could stay in possession indefinitely. Instead, the court imposed an obligation on the debtor to evict the subtenant in order to fulfill the debtor's obligation to surrender the property. *Id.*

*Amicus Wind Down* was a Delaware case. Courts in this district have taken a different approach. They have held that a subtenant may have rights under nonbankruptcy law following a rejection of the main lease – either through agreements with the landlord or by operation of state law – but that section 365(h) itself does not provide the subtenant with a possessory right following a rejection of the prime lease. In effect, the cases in this district have held that section 365(h) applies only when the debtor continues to own or to have its own rights as to the relevant property. They rely also on the notion that giving subtenants an option to remain in possession would be inconsistent with the requirement that the debtor surrender its rights to the property and that the debtor do so immediately. *See, e.g.*, *In re The Great Atlantic & Pacific Tea Company, Inc.*, 544 B.R. 43, 53-54 (Bankr. S.D.N.Y. 2016) (holding that a subtenant may have common-law rights against a landlord, but that, in light of the debtor's obligation to surrender the property, "the subtenant lacks any meaningful right to possession from the debtor [under the sublease]" for purposes of Section 365(h).

Turning back to this case: unless I have missed it, SubCulture does not contend in the pending adversary proceeding that it has continuing rights to occupy the basement space under

Section 365(h) of the Bankruptcy Code, notwithstanding the rejection of the main lease.  Instead, SubCulture contends that it has contractual state law rights to take over the lease as the lessee if and when The Culture Project surrenders its rights under the lease.  SubCulture relies on paragraph 7 of a Consent to Sublease that the landlord executed.

Paragraph 7 of the Consent to Sublease starts by referring to a "termination of cancellation of the lease," but I believe the word "of" was intended to be "or."  Paragraph 7 states:

> In the event of any termination of *[sic]* cancellation of the lease by the landlord as a result of any occurrence, action or inaction on the part of tenant or upon the surrender of the lease, the subtenant shall be provided prompt notice by landlord of such termination, cancellation, or surrender and shall have the first right (but not the obligation) within fourteen days of its receipt of such notice to enter into the lease as if named tenant thereunder, provided, however, that subtenant shall not be responsible or liable for any prior default or breach under the lease by tenant."

SubCulture claims that this provision gives it rights under nonbankruptcy law to take over the lease following a rejection of the lease and a surrender of the debtor's rights.

The landlord opposes the relief sought by SubCulture.  It points to other provisions in the Consent to Sublease, and it contends that the sublease terminates if there is a termination of the main lease.

SubCulture seeks a temporary restraining order that would permit SubCulture to occupy and operate not only the basement premises currently used by SubCulture, but also the ground floor theater space currently used by The Culture Project, on the condition that SubCulture pay a one-month security deposit, plus the rent that The Culture Project would be obligated to pay on a going-forward basis.  It also seeks to enjoin The Culture Project, the landlord, or any other person from removing or interfering with lighting or audio equipment or theater chairs until ownership rights to those items are determined.  I noted last week that no claim as to this

equipment had been included in the complaint.  This morning, SubCulture has moved to amend

its complaint to add such a claim.

Having identified what the issues are in the litigation, the first question that I need to

consider is whether I have jurisdiction over those issues.  The landlord contends that I do not – or

has orally contended that I do not; I do not believe the landlord has filed any papers on the

subject.

Sections 157 and 1334 of Title 28 of the United States Code give me jurisdiction over

cases and proceedings that arise under the Bankruptcy Code or that arise in bankruptcy cases or

that are related to bankruptcy cases.  A case or proceeding arises under the Bankruptcy Code if it

asserts a claim that is created by the Bankruptcy Code.  Under the controlling case law, a matter

arises in a bankruptcy case if it is not based on a right created by the Bankruptcy Code, but

nevertheless "would have no existence outside of the bankruptcy."  *Elliott v. GM LLC (In re*

*Motors Liquidation Co.*), 829 F.3d 135, 153 (2d Cir. 2016), (citing *Baker v. Simpson*, 613 F.3d

346, 351 (2d Cir. 2010)).

I also have jurisdiction over proceedings that are "related to" the bankruptcy case that is

before me.  Generally, before a plan is confirmed, a civil proceeding is related to a title 11 case if

the action's outcome might have any conceivable effect on the bankrupt estate.  *Residential*

*Funding Co. LLC v. UBS Real Estate Securities (In re Residential Capital, LLC*, 515 B.R. 52, 63

n. 12 (Bankr. S.D.N.Y. 2014) (citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d

572, 579 (2d Cir. 2011)).

In this adversary proceeding, if the amendment of the Complaint is allowed, two separate

issues will be raised.  One relates to SubCulture's contention that it may take over the main

lease.  The other is a dispute over the ownership of the lighting equipment, audio equipment, and

theater seats.  They really are separate matters that, to a large extent, involve different parties.  I

will discuss my jurisdiction over the two issues separately.

     As to the disputes over the interpretation of the consent to sublease: those are not based

on the Bankruptcy Code and do not arise under the Bankruptcy Code.  They also are not matters

that could only have existed in this bankruptcy case.  Here, the debtor was already subject to

eviction proceedings brought by the landlord before the debtor filed its bankruptcy petition.  The

lease rejection may happen in the bankruptcy case if the deadline expires, but the surrender of

the debtor's rights due to nonpayment is hardly a result that would have no existence outside of

the bankruptcy.  The claims regarding rights under the Consent to Sublease, therefore, do not

arise under the Bankruptcy Code and do not arise in a bankruptcy cased as those terms are used

in the jurisdictional statutes.

     SubCulture argues that the claims asserted under the Consent to Sublease nevertheless are

related to The Culture Project's bankruptcy case.  SubCulture also consents to a final

determination of those claims by this Court.  The landlord argues that the claims under the

Consent to Sublease are not related to the bankruptcy case, and even if they were, the landlord

does not consent to a final determination of those claims by this Court.

     Here, the outcome of the adversary proceeding could affect The Culture Project in two

ways.  First, if it is able to remain in possession and to take over the lease, SubCulture has

promised to allow a current production to continue in the theater that was used by The Culture

Project.  That current production is now scheduled to run through May 21.  Allowing it to finish

its run could protect The Culture Project against claims.  However, the landlord has indicated

that it also is willing to make arrangements to allow the currently running production to finish its

run in The Culture Project's theater space.  So this consideration is not of great consequence.

Second, the outcome of the adversary proceeding could determine whether SubCulture retains use of the space and therefore, could affect claims that SubCulture might make against The Culture Project for breach of the sublease.  Those claims would be pre-petition general unsecured claims because the sublease was a pre-petition agreement.  But a pre-petition claim can have some effect on an estate and therefore, can create "related-to" jurisdiction.  It, therefore, appears to me that the matter – in order words, the dispute over the Consent to Sublease – is related to the bankruptcy case in a way that is sufficient to confer jurisdiction.  I do not agree with the landlord's arguments to the contrary.  But while I have "related to" jurisdiction over that dispute, such jurisdiction would not give me the power to render a final and binding decision in the absence of the consent of the landlord as well as the consent of SubCulture.

The situation appears to be different as to the disputes over the lighting equipment, the audio equipment, and the theater chairs.  A fundamental part of any bankruptcy proceeding is the collection of assets that belong to an estate.  Disputes often arise as to the nature of an estate's interest in particular property.  Courts have consistently held that a bankruptcy court has "core" jurisdiction to determine whether particular property belongs to an estate and may render final decisions as to such disputes.  *See*, *e.g.*, *Carrega v. Grubb & Ellis Co. (In re Grubb & Ellis Co.)*, 523 B.R. 423, 440 (S.D.N.Y. 2014); *In re Velo Holdings Inc.*, 475 B.R. 367, 386 (Bankr. S.D.N.Y. 2012).  Whether the debtor owns these items does not merely affect the estate; it goes directly to the issue of what the estate is, and the Bankruptcy Code directly gives the debtor rights to demand that property belonging to the estate be turned over to the debtor for application in the payment of creditor claims in the bankruptcy case.  To the extent that the debtor claims an ownership interest in the equipment and chairs, then, the Court has core jurisdiction over the dispute, and not merely "related to" jurisdiction.

10

Having found that subject-matter jurisdiction exists, however, I must also consider whether I should exercise that jurisdiction or whether, as the landlord urges, I should abstain from doing so.

Abstention issues may arise under two different statutory provisions. Section 305 of the Bankruptcy Code gives me discretion to dismiss or to suspend all proceedings in a case. That would mean suspending everything in the entire Culture Project bankruptcy case. Nobody urges that result.

Section 1334(c) of Title 28 separately provides that I may abstain from hearing a particular proceeding if doing so is in the interest of justice or in the interest of comity with state courts or respect for state law. The House Report that accompanied the 1978 Bankruptcy Code stated that Section 1334(c) was enacted to codify prior case law and to ensure that the jurisdiction of the bankruptcy "is exercised only when appropriate to the expeditious disposition of bankruptcy cases." H.R. Rep. No. 595, 95th Cong., 1st Sess. 51 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6012. I should note that the same abstention criteria apply no matter what the ground for my jurisdiction is, and not simply because a matter is related to the bankruptcy case. *See* 28 U.S.C. § 1334(c)(1).

Case law has identified a number of factors that may be relevant in deciding whether abstention is appropriate. In *Cody, Inc. v Orange County (In re Cody, Inc.)*, 281 B.R. 182, 190-91 (S.D.N.Y. 2002), the district court identified the following twelve factors that have been considered in prior decisions:

> (1)    the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
>
> (2)    the extent to which state law issues predominate over bankruptcy issues;
>
> (3)    the difficulty or unsettled nature of the applicable state law;

(4)    the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)    the substance rather than form of an asserted "core" proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)    the burden on the court's docket;

(10)    the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial; and

(12)    the presence in the proceeding of non-debtor parties.

As is almost always the case when courts adopt multifactor tests, the lines between the different factors are blurry, and in fact, there is quite a bit of overlap and duplication among them. Five of the factors that I have listed (factors 2, 3, 4, 7 and 8) relate to the presence of state law issues or of proceedings in the state court. Here, there is no pre-existing case in state court (factor 4). However, the claimed rights depend entirely on New York law, not bankruptcy law. There are issues over which I do not have core jurisdiction relating to the consent to sublease and they are matters that could, if necessary, be severed from the core issues regarding the equipment and theater chairs. The disputes over the Consent to Sublease also raise potential issues as to what SubCulture's rights properly are in the event the landlord does not offer a new lease. Nobody has cited any authorities to me suggesting that SubCulture would have an open-and-shut clear-cut right under state law to stay in possession and to use the space while that issue is being decided, as opposed to a damage claim.

I also note that SubCulture does not merely want to continue to occupy the space that it is already occupying. It wants, on an interim basis, to be given the right to control the ground floor space that The Culture Project previously occupied. Instead of maintaining the status quo, this, in effect, would give SubCulture a sort of specific performance on an interim basis.

I do not mean to resolve this issue right now or to suggest that the request is improper in any way. I mean, in the course of the extension discussion here, only to identify issues that are raised and that are predominantly state-law issues and that are not nearly so straightforward as SubCulture has contended. If all other things were equal, the state court would be a better place for those state law issues to be decided.

Four of the abstention factors (items 1, 5, 6 and 9) call for me to weigh the effects on the bankruptcy case and the degree of relatedness to the estate. The disputes as to the equipment and chairs seem properly to belong in this court for reasons I have stated. However, I am not at all convinced that the claims over the Consent to Sublease should stay here. As noted above, the outcome of the dispute over the Consent to Sublease may result in claims against the estate. But I believe that I should presume that a state court ultimately would reach the same decision on the merits that I would reach as to the disputes between SubCulture and the landlord. If I were to make that assumption, then the ultimate effect on the debtor would be the same, regardless of where the case proceeds.

There certainly are cases where a debtor needs to reorganize and cannot do so without resolution of a dispute, and where it therefore makes more sense for the bankruptcy court to hear a matter. But it is not clear to me that we have such a situation with regard to the disputes under the Consent to Sublease. If the debtor loses its rights under the lease, then any reorganization will have to involve some continued operation that does not involve the lease. The disputes

between SubCulture and the landlord will not really affect that.  As I mentioned, there would be

the potential for administrative claims if the landlord were not to honor the rights of the

producers of the current show to finish their use of the space licensed by The Culture Project, but

the landlord has indicated that it will not disturb that production and nobody has suggested

anything to the contrary to me or offered any evidence to the contrary.

In addition, if I were to keep jurisdiction of the claims over the Consent to Sublease, on

the theory that they could affect the estate, I could only render a report and recommendation

rather than a final decision on those claims.  That is because the matter is only "related to" a

bankruptcy case, and the landlord has not consented to a final determination by me.  Having the

matter here, subject only to a report and recommendation that then would require further

proceedings in another court, is not the most efficient procedure to follow in resolving a case.

As to the three other considerations (10, 11, and 12): there does not appear to be any

forum shopping going on here.  And there does not appear to be a jury-trial right; at least nobody

has so argued.  The debtor is a party to the disputes over the equipment and chairs. However the

parties to the dispute over the consent to sublease are nondebtors.  The debtor is named as a party

in the adversary proceeding as to that issue, but it is not clear to me at all why that is the case.

The real parties to the dispute over the Consent to Sublease are SubCulture and the landlord.

On the whole, there are arguments each way and factors that point each way, but it

appears to me that the better course, after considering the above factors, is to retain jurisdiction

over disputes relating to the ownership of the equipment and theater seats, but to abstain from

hearing the disputes over the interpretation of the Consent to Sublease.  At least one other court

has reached a similar conclusion in somewhat analogous circumstances.  *See Tebo v. Elephant*

*Bar Restaurant (In re Elephant Bar Restaurant)*, 195 B.R. 353, 357-58 (Bankr. E.D. Pa. 1976)

(holding that a rejection terminated a debtor's own possessory rights but that the subtenant retained rights to the extent that such rights are enforceable under applicable nonbankruptcy law, and that the court would abstain from deciding that state law issue.)

We originally scheduled the hearing on this matter so it would happen prior to the expiration of the statutory deadline for the assumption or rejection of the lease, with the idea that if I were to abstain from hearing the adversary proceeding or the claims under the Consent to Sublease, there would still be time for SubCulture to file suit and to seek a temporary restraining order in the state court. Based on my rulings today, that is what SubCulture will have to do.

I will enter an order that abstains from hearing the claims relating to the Consent to Sublease and that directs dismissal of those claims without prejudice, but that allows the Complaint to be amended to add the claims relating to the equipment and theater seats.

I have also been asked to enter a temporary restraining order as to the equipment and theater seats, but no showing has been made to me that SubCulture faces any imminent risk or that such an order is needed. So the application is denied as to those items.

SubCulture has also asked, in the event that I abstain from hearing all or some part of the case, that I lift the automatic stay to allow issues under the Consent to Sublease to be litigated in the state court. I do not really see why relief from the stay would actually be needed for that purpose, but in order to prevent any confusion, I will enter an order that makes clear that the disputes between SubCulture and the landlord, as to SubCulture's rights under the Consent to Sublease, are not subject to the automatic stay and may be litigated in the state court. I will not grant relief from the stay as to litigation of issues relating to the debtor's ownership interest in equipment or chairs or as to the naming of the debtor in any litigation you have in the state court. I do not think that the issues as to the equipment or the chairs need or should go to state court or

that the debtor need or should be a party to the litigation over your rights under the Consent to

Sublease.  And I will enter orders to that effect.


Dated: New York, New York
      May 10, 2017


                      /s/ **Michael E. Wiles**
                      UNITED STATES BANKRUPTCY JUDGE